UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
UNITED STATES OF AMERICA,                       :
:
                           Plaintiff,   :    10 Civ. 7997 (TPG)
:
        – against –                    :    **OPINION**
:
BARRY FISCHER LAW FIRM, LLC,                    :
KESTEN DEVELOPMENT CORP.,                       :
TURIST-CÂMBIO VIAGENS E TURISMO                 :
LTDA, RICHARD E.L. FOGERTY and G.               :
JAMES CLEAVER as Liquidators of                 :
Trade and Commerce Bank, and THE                :
FEDERATIVE REPUBLIC OF BRAZIL,                  :
:
        Interpleader Defendants.        :
:
------------------------------------------------x

      This case is an interpleader action brought by the United States to determine the proper recipients of approximately $8.2 million seized in 1999 by the Government from United States bank accounts held for the benefit of Kesten Development Corporation ("Kesten"), a British Virgin Islands corporation, and its parent, Turist-Cambio Viagens Turismo LTDA ("Turist"), a Brazilian company.

      Interpleader defendant the Federative Republic of Brazil ("Brazil") moves to discharge the United States as plaintiff and dismiss the claims of fellow interpleader defendants Barry Fischer Law Firm ("Barry Fischer") and Richard Fogerty and G. James Cleaver as liquidators ("the Liquidators") of Trade and Commerce Bank ("TCB"). Lastly, Brazil moves to dismiss the interpleader


complaint in its entirety on the grounds of comity and *forum non conveniens*.[1]

For their part, the Liquidators[2] move to permit execution on a judgment received against Kesten in the British Virgin Islands (the "BVI judgment").

All motions are denied.

## Background

This opinion assumes familiarity with the tortured history of the seized cash that composes the interpleader fund. An account of these facts can be found in this court's earlier opinion, dated January 15, 2011, dealing with certain prior motions. See United States v. Barry Fischer Law Firm, LLC, No. 10-cv-7997, 2011 U.S. Dist. LEXIS 756, at *1-6 (S.D.N.Y. Jan. 5, 2011).

In summary, the United States seized $6,871,042.36 from the "Venus" account at the New York branch of MTB Bank for the benefit of Kesten and $1,345,771.64 from the "Tadeland" account at the New York branch of EAB Bank for the benefit of Turist. In 2000, the U.S. instituted a forfeiture action against Kesten and Turist in the District of New Jersey. The action was ultimately dismissed and the money was ordered returned. See U.S. v. $8,221,877.16, No. 00 Civ. 2667, slip op. (D.N.J. July 6, 2004).

Thereafter, the United States District Court for the District of Columbia granted the U.S. a restraining order against the funds on January 26, 2005 pending the outcome of a Brazilian criminal proceeding, discussed below. In

---

[1] Brazil has recently filed a motion for partial summary judgment as a portion of the interpleader fund. This motion is not yet fully briefed and is not decided by the present opinion.
[2] Only Fogerty moves to permit execution on the BVI judgment, although both Cleaver and Fogerty, as joint liquidators, have heretofore acted together in the litigation. Since Brazil's motion to dismiss references both Liquidators, and Fogerty has not offered any reason for the omission of Cleaver in his motion to enforce the BVI judgment, the court will refer to the "Liquidators" for purposes of both motions.

2010, the U.S. Court of Appeals for the District of Columbia Circuit issued a decision in an unrelated case, In re Tiger Eye Investments, Ltd., 613 F.3d 1122 (D.C. Cir. 2010), that resulted in the *vacatur* of the restraining order.

In the meantime, conflicting claims against the money had surfaced, prompting the Government to file this action. For present purposes, a description of the bases for these claims will suffice.

A) Brazil

In 2004, the Federal Court in Curitiba, Brazil issued a Seizure Order covering the two accounts in question: the "Venus" account containing $6,871,042.36 held at the New York branch of MTB Bank for the benefit of Kesten and the "Tadeland" account containing $1,345,771.64 held in the New York branch of EAB Bank for the benefit of Turist. Brazil is attempting obtain this money through forfeiture proceedings related to the criminal prosecution of Kesten's and Turist's principals, Antonio Pires de Almeida, Ruriko Inoue, and Roseli Ciolfi ("Pires defendants"), for money laundering and other crimes in the Sixth Specialized Federal Court of São Paulo. All evidence has been submitted in the criminal case, and the parties await a verdict from the São Paulo court. Should the court find the Pires defendants guilty, Brazil will argue in the forfeiture proceeding that Kesten and Turist are shell companies that facilitated the Pires' defendants' criminal activities, and that the money in the Venus and Tadeland is thus forfeit as criminal proceeds. Should it win a forfeiture judgment, Brazil would then initiate a proceeding to have the United States enforce the judgment pursuant to its treaty obligations and 28 U.S.C. §

2467.

B) <u>Barry Fischer</u>

Barry Fischer represented Kesten and Turist in the civil forfeiture action brought by the United States against Kesten and Turist and ultimately resolved in favor of the defendants, and its claim derives from unpaid legal fees in that representation. Its theory in support of its claim, however, has changed since this litigation began.  In its answer to the interpleader complaint, Barry Fischer in effect made a claim based upon an oral agreement granting Barry Fischer a contingent fee on one-third of the seized funds as payment for representation. But in its Declaration of August 9, 2011, Barry Fischer withdrew that claim and asserted an amended claim based on a written contract allegedly entered into by Barry Fischer (through a predecessor entity Lacaz Martins, Srour, & Fischer, LLP) and Kesten, through its principal Antonio Pires de Almeida, on February 16, 2000. The contract recites amounts due as a result of services already rendered by Barry Fischer, establishes new hourly rates and a contingent fee to compensate for future representation, and creates "retaining and charging liens" on "any recovery of funds seized from the Kesten account" to cover "all open balances stated herein, together with any contingent fees which may be due…." Ex. 1 of Def. Barry Fischer Decl. at 3. Barry Fischer now claims that this contract entitles it to a lien on the Venus account in the amount of $894,050.09.

C) <u>Liquidators</u>

The Liquidators determined that TCB's corrupt owners, the Peirano

family, had improperly funneled money to Kesten's "Venus" account at MTB. In an attempt to recover this money, TCB sued Kesten in the British Virgin Islands ("BVI") in August 2010 for its knowing and unconscionable receipt of said money. To do so, TCB reinstated Kesten as a BVI corporation by paying its outstanding fees to the BVI government and served Kesten's registered agents in the BVI, Sucre and Sucre Trust Limited, who resigned their post shortly thereafter. It is unclear whether Sucre attempted to notify Kesten's principals of the claim against the corporation, and in any event Kesten did not file an Acknowledgment of Service as required by BVI law. TCB then sought default judgment under Rule 12.4 of the BVI Civil Procedure Rules, which provides for automatic default judgment for failure to file an Acknowledgment of Service within the prescribed period on a claim for a specified sum of money. This default judgment ordered Kesten to pay restitution of $15,936,329 to TCB as claimant. The Liquidators then successfully moved for recognition of the BVI judgment in the Southern District of New York Bankruptcy Court, where TCB has an ongoing Chapter 15 proceeding. Liquidators now move to enforce the BVI/S.D.N.Y. judgment against the interpleaded fund.

   D) <u>Kesten and Turist</u>

In addition, both Kesten and Turist are named as interpleader defendants, but neither has appeared in this action. Their possible claim to the interpleaded money would appear to derive from the 2004 District Court of New Jersey decision ordering its return.

\*\*\*

Brazil now moves to dismiss the interpleader complaint in its entirety on grounds of international comity and *forum non conveniens*. It also moves to discharge the United States as interpleader plaintiff and dismiss the claims of interpleader defendants' Barry Fischer and Liquidators. Liquidators move for a writ of execution to enforce their BVI judgment against the seized money from the "Venus" account. The court turns to these motions.

## Discussion

I) Motion to Dismiss the Interpleader Complaint

   A) Comity

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience." Hilton v. Guyot, 159 U.S. 113, 163-64 (1895). Under the doctrine, a court may "refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries," Pravin Banker Assocs., Ltd. v. Banco Popular del Peru, 109 F.3d 850, 854 (2d Cir. 1997). Brazil asks the court defer to the Brazilian criminal proceedings under the doctrine and dismiss this interpleader action.

However, "[g]enerally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict." Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006). "Rather, parallel proceedings in the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is

reached in one which can be pled as *res judicata* in the other." Id. (internal quotations omitted). While district courts routinely abstain under the doctrine of comity when confronted with creditor claims related to pending foreign bankruptcies, see Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d Cir. 1999), outside this "discrete category," a district court must "determine whether exceptional circumstances exist that justify the surrender of…jurisdiction." Royal and Sun Alliance, 466 F.3d at 92-93.  These circumstances include:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

Id. at 94.

Brazil asserts that since both the instant case and the criminal proceedings in Brazil concern the interpleaded funds, they are substantially the same, and comity warrants dismissal of this case given Brazil's sovereign interest in the integrity of its criminal proceedings.  Moreover, the argument goes, these parallel proceedings concern the rights of claimants to a limited pool of assets, so the court should treat the Brazilian forfeiture proceeding like it would a foreign bankruptcy and dismiss this case as a matter of course.

The court declines to draw the proposed analogy between the instant Brazilian proceedings and foreign bankruptcies. District courts defer to foreign bankruptcies because the "equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single

proceeding." J.P. Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V., 412 F.3d 418, 424 (2d Cir. 2005). Interpleader defendants Liquidators and Barry Fischer are not parties in the Brazilian criminal proceedings, nor can they be joined in those proceedings. Rather, Brazil has conceded that Barry Fischer and Liquidators must assert their claims in distinct proceedings in Brazil. See Def. Rep. of Braz. Reply to Def. Barry Fischer at 7. Thus the considerations of administrative efficiency and judicial economy that lead courts to abstain in deference to foreign bankruptcies do not apply here.

Furthermore, the court does not find exceptional circumstances to justify surrendering jurisdiction over this case. First and foremost, this case does not parallel the Brazilian proceedings. Proceedings are only parallel for comity purposes if the parties litigating the matters are substantially the same. Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 285 (S.D.N.Y. 2006). This case and the Brazilian criminal forfeiture only appear parallel if one discounts, as Brazil does, the claims of the other interpleader defendants. In Brazil, Liquidators and Barry Fischer can only seek the interpleaded funds if and when the criminal proceedings—which have lasted the better part of a decade—terminate in favor of the Pires defendants. See Decl. of Anamara Osorio Silva at 1. Nor, for much the same reasons, do the remaining Royal & Sun Alliance factors favor abstention.

Thus after balancing the relevant factors, the court declines to dismiss this action under the doctrine of comity.

B) <u>Forum non conveniens</u>

Brazil also seeks dismissal under the doctrine of *forum non conveniens*. A federal court may dismiss a case on this ground "when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience…." <u>Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.</u>, 549 U.S. 422, 429 (2007) (internal quotations omitted).

The Second Circuit has laid out a three-step procedure to guide district courts in their application of the doctrine:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

<u>Norex Petroleum, Ltd. v. Access Indus.</u>, 416 F.3d 146, 153 (2d Cir. 2005) (citations omitted).

Ultimately, a defendant must demonstrate "genuine inconvenience and a clear preferability of the foreign forum" to justify dismissal under the doctrine. <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 65, 75 (2d Cir. 2001). Moreover, "the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." <u>Bigio v. Coca-Cola Co.</u>, 448 F.3d 176, 179 (2d Cir. 2006) (internal quotations omitted).

The second step is dispositive in the present case. At the second step, an "alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."

Pollux Holding, Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003). That forum must also be "presently available" to the claimants. Id. at 159. See Norex Petroleum, 416 F.3d at 158.

Brazilian courts, however, lack a domestic analogue to interpleader. Def. Rep. of Braz. Reply to Def. Barry Fischer at 7. While, the interpleader defendants' claims could be brought as actions sounding in restitution and breach of contract against Kesten, these claims could not be brought until after the termination of the Brazilian criminal proceedings in favor of the Brazilian criminal defendants. Indeed, Brazil appears to concede that Brazilian courts are not presently available to hear Barry Fischer's claim. Def. Rep. of Braz. Reply to Def. Barry Fischer at 7.

Thus Brazil has not shown that it would be significantly preferable for a Brazilian forum to hear the claims consolidated in this action. The action needs to remain before the court to ensure that the claims of Brazil, Barry Fischer, and the Liquidators can all be dealt with in an appropriate manner.

II)   Motion to Discharge Plaintiff United States

A disinterested plaintiff may be dismissed from an interpleader action provided that the prerequisites of 28 U.S.C. §1335 are met: "[an interpleaded] fund greater than $ 500; adverse claimants of diverse citizenship; a deposit of the fund in court; and a disinterested stakeholder." Mendez v. Teachers Ins. & Annuity Ass'n & College Retirement Equities Fund, 982 F.2d 783, 787 (2d Cir. 1992). The interpleaded fund clearly satisfies the first condition, and the second is satisfied by this court's recent holding that the Government had a

real and reasonable fear of conflicting claims to the fund. See <u>United States v. Barry Fischer Law Firm, LLC</u>, No. 10-cv-7997, 2011 U.S. Dist. LEXIS 756, at *8-9 (S.D.N.Y. Jan. 5, 2011). The Government satisfied the third condition when it deposited the $8.2 million dollars with the clerk of this court on October 21, 2010.

But while the United States appears to be a disinterested stakeholder—in that it has no monetary stake in the outcome of this litigation—Brazil recently requested that the Government file a Statement of Interest in the case pursuant to 28 U.S.C. § 517. Interpleader plaintiffs do not often state a preference for one claimant over another. In light of this unusual circumstance, the court will not dismiss the United States from the case at Brazil's behest. Any subsequent motion to dismiss the United States as interpleader plaintiff should come from the Government itself.

III) Motions to Dismiss the Claims of the Interpleader Defendants

  A) Standard

The court has previously held that this action was properly brought in interpleader and all interpleader defendants have since been served, so this action now proceeds to the stage where title to the interpleaded property is litigated between the adverse claimants. At this stage, the action proceeds like any other in federal court. <u>Avant Petroleum, Inc. v. Banque Paribas</u>, 853 F.2d 140, 143. Accordingly, Brazil has moved for judgment on the pleading under Rule 12(c) and moved to dismiss the claims of interpleader defendants for failure to state a claim under Rule 12(b)(6). The same standard governs both

motions. See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). The claims must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotations omitted).

  B) Barry Fischer

As a threshold matter, the court must determine the propriety of Barry Fischer's attempt to amend its original claim. While a party generally may not amend a claim through motion papers, see Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), the court " may treat the [claimant's] revised theory of the case as a motion to amend the pleadings pursuant to Fed. R. Civ. P. 15(a)" and hear the claim. Bowman v. City of Middletown, 91 F. Supp. 2d 644, 663 (S.D.N.Y. 2000). It is appropriate to do so here, since the Government, rather than Barry Fischer, initially caused the prior version of the claim to come before the court by filing the interpleader complaint. In these circumstances, Barry Fischer deserves some latitude to alter its position in the course of litigation. Hence the court will decide the motion to dismiss by reference to the claim set forth in Barry Fischer's most recent Declaration.

Brazil urges the court to dismiss the amended claim on the grounds that the contingency in the document creating the charging lien has not occurred, that Barry Fischer does not in any event have a charging lien under New York law, and that any residual claim sounding in simple breach of contract cannot suffice in interpleader because the claim does not relate to the specific funds at issue.

Brazil's bases its first point upon language in the contract tying the alleged lien to "any recovery by [Kesten] of any of the funds seized from the Kesten account...." See Ex. 1 of Def. Barry Fischer Decl. at 3. It claims that since Kesten has not actually recovered the seized money, no charging lien exists. But the only reason Barry Fischer's claim has arguably not yet accrued is that the United States has not complied with a court order mandating the return of the seized money. What's more, Barry Fischer's claim is among the reasons the United States opted to bring this action rather than comply with the court order. The very purpose of interpleader is to resolve such competing claims of entitlement.

Brazil's bases its second argument on N.Y. C.L.S. Jud. § 475, which creates a charging lien on a client's "action, claim or counterclaim...and the proceeds thereof." New York courts have held that an attorney who successfully defends a client's existing interest cannot claim a charging lien under that provision. See Theroux v. Theroux, 536 N.Y.S.2d 151, 153-154 (N.Y. App. Div. 1988). As such, Brazil argues, Barry Fischer cannot claim a charging lien for defending Kesten's existing interest in the seized money.

Barry Fischer, however, does not rely on N.Y. C.L.S. Jud. § 475 to establish its lien. Rather, its alleged lien derives from a written contract. That claim can stand despite the absence of a lien under Section 475. See Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 458-459 (N.Y. 1989); Schoenherr v. Van Meter, 215 N.Y. 548, 551-552 (N.Y. 1915).

Since the written contract provided by Barry Fischer supports a plausible

claim to a charging lien on the specific funds at issue, the court does not reach Brazil's third point. Open questions regarding the timeliness of Barry Fischer's claim and its behavior in equity cannot be answered without further factual development. Accordingly, the court denies Brazil's motion to dismiss the claim of interpleader defendant Barry Fischer.

C) Liquidators

Brazil seeks dismissal of the Liquidators' claim on the grounds that they are general judgment creditors of Kesten who cannot state a claim to the specific *res* making up the interpleader fund, and that, in any event their BVI judgment against Kesten was inappropriately granted and invalid.

The former argument runs counter to case law, which grants general judgment creditors standing in interpleader to enforce their judgments against a stake in which the judgment debtor retains an interest. See Weininger v. Castro, 462 F. Supp. 2d 457, 471-475, 500-501 (S.D.N.Y. 2006). Differences in the nature of defendants' claims go to their priority in the interpleader action, not to defendants' standing. See United States v. Benitez, 779 F.2d 135, 140 (2d Cir. 1985). This case is unusual in that the Liquidators seek to enforce a judgment against a debtor named as a fellow interpleader defendant, but other courts have allowed judgment creditors to pursue such a claim in similar circumstances. See Spielvogel v. Harkins & Maeger, Ltd., 639 F. Supp. 1397, 1398 n. 1 (S.D.N.Y. 1986). Thus while interpleader actions must involve an identifiable stake, claims to that stake need not be directly traceable to it.

Brazil next argues that TCB's BVI judgment was improper in two respects. First, it alleges that the Liqidators' service of Kesten was improper, and that TCB failed to disclose its method of service before the Southern District Bankruptcy Court. Second, Brazil alleges that a prior Cayman Islands decision against a TCB-related entity (the "Cayman case") should have barred TCB from bringing the BVI claim in the first instance.

The latter argument is complex and requires some discussion of the Cayman case, in which the Grand Court of the Cayman Islands held that Trade and Commerce Bank Creditor Recoveries Ltd., an entity created to pursue claims for TCB, could not bring a professional negligence claim against TCB's auditor for failing to detect the Pieranos' fraud. The Grand Court imputed the fraud of TCB's directors and owners to TCB itself and held that TCB, as a perpetrator, could not profit from its own wrongdoing in an action against its auditor under the British common-law principle of *ex turpi causa non oritur actio*. See TCB Credit Recoveries Ltd. v. Arthur Andersen, L.L.P., 2008 CILR 486.

Brazil claims that the Cayman case foreclosed further action by TCB to seek recovery for wrongdoings in which its directors were implicated, such as the claim against Kesten for knowing and unconscionable receipt of TCB funds. Brazil then asserts that the Liquidators, as officers commissioned by the courts of the Cayman Islands, had a heightened duty of candor to the BVI court that mandated disclosure of the Cayman case in their BVI Statement of Claim. The thrust of their argument is that Liquidators' failure to disclose the Cayman

case in the BVI case rendered the default BVI judgment invalid as a matter of law.

The court will not dismiss on either ground. Formally speaking, by serving the registered agent of an active BVI corporation, TCB properly served Kesten under BVI law. Furthermore, the Liquidators have submitted an uncontroverted affidavit stating that they disclosed their method of serving Kesten to the Bankruptcy Court when seeking to domesticate the BVI judgment. While Brazil casts aspersions on TCB's unusual efforts to revive Kesten, it does not establish a legal basis for dismissing the case on that ground.

Brazil's second argument disguises an affirmative defense on the merits of the BVI case as a jurisdictional defect. Perhaps Kesten could have invoked the *ex turpi causa non oritur actio* principle in the BVI case, but it would have done so as a defense, as the British authorities on the doctrine make clear. See Stone & Rolls Ltd. (in liquidation) v. Moore Stephens, 2009 UKHL 39. Additionally, while the court doubts that Kesten could have used the Cayman case to collaterally estop the Liquidators in the BVI case—given the different elements of the claims in the two cases—under American law it would have attempted to do so through an affirmative defense, see Austin v. Downs, Rachlin & Martin, 270 Fed. Appx. 52, 53 (2d Cir. 2008), and Brazil has not established that matters stand differently under the law of the British Virgin Islands.

Kesten, of course, offered no defense in the BVI matter. By defaulting, Kesten ensured that a judgment would be entered against it and assumed the risk that a mistake of law or fact infected the judgment. See Ackermann v. Levine, 788 F.2d 830, 842 (2d Cir. 1986). Kesten, however, can still move to set aside the BVI default judgment pursuant to Eastern Caribbean Supreme Court Civil Procedure Rule 13.3(1) by establishing, *inter alia,* that it "has a real prospect of successfully defending the claim."

Brazil, however, claims that this unasserted affirmative defense voids the BVI judgment *ab initio.* It argues that the Liquidators were under a duty as officers commissioned by the Cayman Islands to disclose this negative holding to the BVI court before bringing their claim, and that their failure to do so somehow nullified the BVI judgment. But Brazil has failed to demonstrate that such a heightened duty applies in these circumstances, as the case it relies upon, Ex Parte James (1874) 9 Ch App 609, does not reach the type of claim at issue in the BVI case.

This is not to say the court will enforce the BVI judgment in this case. The court merely holds that the supposed improprieties of the BVI/SDNY judgment do not warrant dismissal of the Liquidators' claim under Rule 12(b)(6). At this stage, it suffices that Liquidators can truthfully assert that they have obtained a judgment against Kesten in both the British Virgin Islands and this judicial district. This alone gives rise to a plausible claim of entitlement to the interpleaded funds.

IV) Motion to Permit Execution on Judgment

Finally, the Liquidators renew their motion for a writ of execution to enforce their BVI judgment against the interpleaded money from the "Venus" account. In its January 5, 2011 opinion, the court denied the prior motion as premature, and it similarly denies the present motion.

Liquidators argue that they are entitled to possession of the "Venus" funds since Brazil's claim to the funds is unripe and Barry Fischer has agreed with the Liquidators to assert no claim against the "Venus" account. Barry Fischer, however, has quite clearly stated a claim to the money in the "Venus" account in its most recent declaration to the court. The court thus denies the Liquidators' motion to permit execution on their judgment, since they have failed to establish that they are entitled to the money seized from the "Venus" account despite Barry Fischer's claim to a sizable portion of it.

## Conclusion

For the foregoing reasons, the court denies Brazil's motion to dismiss the interpleader complaint and the claims of interpleader defendants Liquidators and Barry Fischer. It also denies the Liquidators' motion to permit execution on judgment. This opinion resolves motions 33 and 49 on the docket.

SO ORDERED.

Dated: New York, New York
February 23, 2012

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/24/12